April 8, 2009

Mr. Robert Scott
Commissioner of Education
Texas Education Agency
1701 North Congress Avenue
Austin, Texas 78701-1494

Opinion No. GA-0705

Re: Authority of a school district to use a reverse auction conducted by a third party to purchase personal property valued at $10,000 or more (RQ-0751-GA)

Dear Commissioner Scott:

On behalf of Beeville Independent School District (the " District"), you ask whether a school district may utilize a private entity to conduct reverse auctions on its behalf for purchases of personal property valued at $10,000 or more.[1] The reverse auction procedure allows a school district to post upcoming purchases that it plans to make, and, "at a previously scheduled time and Internet location, . . . multiple suppliers, anonymous to each other, submit bids" to provide the designated goods or services. TEX. GOV'T CODE ANN. § 2155.062(d) (Vernon 2008); TEX. EDUC. CODE ANN. § 44.031(a)(8) (Vernon Supp. 2008) (authorizing school districts to use the "reverse auction procedure as defined by Section 2155.062(d), Government Code"). Because suppliers bid against each other, "prices start high and go lower as the bidding continues," allowing buyers to obtain a better price than they might otherwise receive using a different purchasing process. E-TEXAS RECOMMENDATIONS, RECOMMENDATIONS OF THE TEXAS COMPTROLLER CG-5 (Dec. 2000), *available at* http://www.window.state.tx.us/etexas2001/recommend/ch02/cg05.html (last visited Apr. 7, 2009).

The Legislature has expressly authorized school districts to utilize reverse auctions in making certain purchases of $10,000 or more. *See* TEX. EDUC. CODE ANN. §§ 44.031(a)(8), .033(a) (Vernon Supp. 2008). You note, however, that "[a]s a practical matter, most public school districts lack the resources, internally, to conduct reverse auctions in a cost-effective manner." District Brief at 2. You therefore ask about a school district's "authority to contract with a private third party to perform such auctions on its behalf." *Id.* at 1.[2]

---

[1]Request Letter at 1 (*available at* http://www.texasattorneygeneral.gov); *see also* Letter from Sara Hardner Leon, Powell & Leon, L.L.P., to Robert Scott, Texas Commissioner of Education, at 1 (Sept. 24, 2008) (attached to Request Letter) [hereinafter District Brief].

[2]Local Government Code section 271.083 authorizes local governmental entities, including school districts, to participate in a purchasing program of the General Services Commission (now the Texas Facilities Commission),

(continued...)

In contracting with the third party auctioneer, you explain that there "is no direct charge to the school district for participating in the reverse auction." *Id.* at 2. Instead, suppliers enter into an agreement with the auctioneer, whereby each supplier agrees "to pay a fee to the auctioneer in the event that the [supplier] is successful in obtaining a contract with the school district by using the reverse auction procedure." *Id.* at 1–2. You also explain that at the end of each auction, the school district has the authority to "reject all offers, using its own judgment and discretion." *Id.* at 2.

Based on these procedures, you ask whether a school district's use of a third party to conduct a reverse auction improperly delegates authority to a private entity. *Id.* at 2.[3] Your question is based on the long-held general rule that in the absence of statutory authorization, a governmental body "may not delegate unlimited legislative powers and functions" or powers "involving the exercise of judgment and discretion." *Moody v. City of Univ. Park*, 278 S.W.2d 912, 922 (Tex. Civ. App.—Dallas 1955, writ ref'd n.r.e.) (upholding city's authority to delegate decisions to approve land use variances to board of adjustment). The Texas Supreme Court has recognized that "in a complex society like ours, delegation . . . is both necessary and proper in certain circumstances." *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 873 (Tex. 2000) (addressing whether the Legislature unconstitutionally delegated power to private landowners). However, it has repeatedly cautioned "against 'allowing delegation of power to exercise *unguided* discretion.'" *Tex. Boll Weevil Eradication Found., Inc. v. Lewellen*, 952 S.W.2d 454, 466 (Tex. 1997) (*quoting* KENNETH CULP DAVIS, 1 ADMIN. LAW TREATISE § 3.1, at 150 (2d ed. 1978)) (emphasis added); *see also Bd. of Adjustment of the City of Dallas v. Patel*, 887 S.W.2d 90, 93 (Tex. App.—Texarkana 1994, writ denied) (emphasizing that "[a]rbitrary, uncontrolled, and unreviewable discretion may not be delegated," and upholding, over delegation doctrine arguments, an ordinance allowing citizens to complain of nonconforming uses).

The statute authorizing school districts to use the reverse auction procedure is silent as to whether they may use a third party to host the auction. *See* TEX. EDUC. CODE ANN. § 44.031 (Vernon Supp. 2008). However, under the delegation doctrine, as explained by the Texas Supreme Court in *Boll Weevil* and its progeny, a constitutional delegation question arises only if the state or a political subdivision purports to grant a private entity "a public duty and the discretion to set public policy, promulgate rules to achieve that policy, or ascertain conditions upon which existing laws will apply." *FM Props. Operating Co.*, 22 S.W.3d at 880. As you explain the reverse auction process using a third party, a school district retains the discretion to decide which contracts to enter into and at what price. The school district simply relies on the private reverse auction company to obtain "specifications for any offer to purchase from the school district," "publish[] the offer" to purchase, and provide the technology and resources to host the auction. District Brief at 1–2. In doing so, a

---

[2](...continued)
including its reverse auction program, if those entities follow certain requirements. *See* TEX. LOC. GOV'T CODE ANN. § 271.083 (Vernon 2005). While the School District is aware of section 271.083, it inquires only about its authority to contract individually with a third party to host a reverse auction. *See* District Brief at 2.

[3]You do not ask and we do not address any statutory provisions that may be applicable to the school district's selection of a third party to host the reverse auction.

school district would not confer on the reverse auction company "a public duty and the discretion to set public policy." *FM Props. Operating Co.*, 22 S.W.3d at 880.[4] Thus, a school district's use of a third party reverse auction company as you have described does not constitute a delegation under the law.

You also ask whether the third party auctioneer's requirement that the potential supplier enter into a contract before the potential supplier may participate in the reverse auction impermissibly limits the number of bidders. District Brief at 3–4. In so asking, you note a previous opinion from this office that prohibited a junior college district from using a designated broker of record to procure bids for insurance, and you compare the broker of record in that circumstance to the reverse auction company here. *See id.* at 3 (discussing Attorney General Opinion JC-0205 (2000)). This office concluded in JC-0205 that the district could not use an insurance broker because "use of a designated broker of record to purchase insurance is a purchasing method that must be expressly authorized." Tex. Att'y Gen. Op. No. JC-0205 (2000) at 6. In so concluding, JC-0205 emphasized that "an insurance agent will be affiliated with a limited number of insurance companies," and that "a designated broker of record will not be able to solicit rates on the district's behalf from all possible insurance companies for a particular policy." *Id.* at 2. Using a broker could thereby "foreclose the district's access to the most advantageous rates and terms." *Id.*

Based on the description of reverse auction companies that you provide, we cannot determine whether the reverse auction company will be affiliated with a limited number of suppliers or whether that will in turn foreclose a school district's access to the best value for the school district. The answer to your question will depend on the specific contract terms that the reverse auction company requires the potential suppliers to enter into, including the fees suppliers must pay, and whether, in fact, those contract terms result in fewer bidders than would otherwise participate in the bidding. This office does not engage in the factual inquiries necessary to make those determinations. Tex. Att'y Gen. Op. No. JC-0326 (2001) at 3 (declining to answer question of whether city contract was legal because of existing fact questions). We emphasize, however, that although the Legislature has expressly authorized the use of reverse auctions by school districts, it continues to charge school districts with choosing the authorized purchasing method that "provides the best value for the district." TEX. EDUC. CODE ANN. § 44.031(a) (Vernon Supp. 2008). It is therefore the responsibility of a school district, in the first instance, to determine whether using a third party to host a reverse auction for the purchase of particular goods or services will provide the best value for the district.

---

[4]The Comptroller of Public Accounts has similarly entered into an agreement with a third party reverse auction company. TEX. COMPTROLLER OF PUBLIC ACCOUNTS, STATE OF TEXAS COOPERATIVE PURCHASING MANUAL 22, *available at* http://www.window.state.tx.us/procurement/prog/coop/coop_manual.pdf (last visited Apr. 7, 2009).

## S U M M A R Y

A school district's use of a third party reverse auction company as described is not an improper delegation of authority.

Whether any contractual requirement by the third party auctioneer impermissibly limits the number of potential bidders is a fact question not appropriately answered by the opinion process.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

ANDREW WEBER
First Assistant Attorney General

JONATHAN K. FRELS
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Virginia K. Hoelscher
Assistant Attorney General, Opinion Committee